[31 NYS3d 35]

Anastasia Klupchak, Respondent, v First East Village Associates et al., Appellants.

First Department, April 28, 2016

**APPEARANCES OF COUNSEL**

*Smith Mazure*, New York City (*Louise M. Cherkis* of counsel), for appellants.

*Kramer, Dillof, Livingston & Moore*, New York City (*Matthew Gaier* and *Pani Vo* of counsel), for respondents.

**OPINION OF THE COURT**

Tom, J.

This appeal raises the issue of whether Multiple Dwelling Law § 53 and related New York City Building Code provisions and regulations which mandate the removal and replacement of vertical ladder fire escapes are applicable to the pre-1929 vertical fire escape from which plaintiff fell and sustained serious injuries. We find that they are.

On the evening of November 15, 2008, plaintiff, Anastasia Klupchak, then 22 years old and a student at New York University, went to the building at 82 Second Avenue in

Manhattan to visit her friend, who lived in apartment 3. The four-story brick building with an attic was constructed in 1841. In 1918, the building was altered from a four-story lodging house and club room to a five-story building with a store, an office, and dwellings for two families. It is unknown precisely when the wrought iron vertical ladder fire escape attached to the building was constructed, but it is undisputed that it was constructed prior to 1929. The two required means of egress (*see* Multiple Dwelling Law § 187 [1] [b]) were an interior stairway and the fire escape.

At about 11:30 p.m., plaintiff climbed through the kitchen window onto the fire escape with two friends, because one of the friends was smoking and they wanted to see the view of the city. Plaintiff was aware that it was dark and that the fire escape had an opening or gap at the edge of the platform leading to the level below. She stood on the platform of the fire escape close to the opening.

At some point, one of her friends inside the apartment stated that it was time to leave. Plaintiff turned toward the apartment to climb through the kitchen window, when the heel of her boot got caught between the slats of the platform. She fell through the opening, landing on her back, approximately 12 feet below the platform, and was rendered paraplegic.

Plaintiff commenced this action against defendant First East Village Associates, a partnership that purchased the building in 1981, whose partners included defendants Bernard McElhone and Susan Schenk. Defendant Tri-Star Equities, Inc., whose president and sole owner was defendant Rod Feldman, has managed the property since 2006.

In her complaint, plaintiff alleged that the building, which housed four separate residential apartments, was a multiple dwelling as defined in Multiple Dwelling Law § 4, which defendants do not dispute, and that the accident was caused by the improper operation and maintenance of the fire escape in violation of Multiple Dwelling Law § 53, Rules of City of New York Department of Buildings (1 RCNY) § 15-10, and 1968 Building Code of City of New York (Administrative Code of City of NY) § 27-380. The parties agree that Multiple Dwelling Law § 53 and 1 RCNY 15-10 prohibit the type of fire escape from which plaintiff fell but disagree as to whether the statutes apply to pre-1929 erected fire escapes.

Defendants moved to dismiss plaintiff's claims alleging violations of Multiple Dwelling Law § 53, 1 RCNY 15-10, and 1968

Building Code of City of NY § 27-380. Among other contentions, defendants argued that the opening sentence of Multiple Dwelling Law § 53 expressly directed the provisions only to fire escapes erected after 1929.[1] Plaintiff cross-moved for partial summary judgment on the issue of whether Multiple Dwelling Law § 53 and 1 RCNY 15-10 were applicable as a matter of law. In support of the motions, the parties provided evidence of changes in the building's occupancy over the years as well as alterations to the building. They also provided affidavits from their experts establishing that the fire escape was a vertical ladder fire escape system.

Supreme Court denied both motions (2014 NY Slip Op 32218[U] [2014]). The court, relying on *People v Little* (53 Misc 2d 645 [App Term, 1st Dept 1967]), concluded that the essential element in a fire escape liability claim under Multiple Dwelling Law § 53 was the date of the erection of the fire escape—specifically, whether it was erected after 1929—and found that whether the building was designated as a tenement, a multi-family dwelling or otherwise, the statute clearly stated that the date of the erection of the fire escape was dispositive. The court further found that the original nature and use of the building was "murky," but that it was undisputed that it was built sometime before 1918 and before the Multiple Dwelling Law was enacted in 1929 (2014 NY Slip Op 32218[U], *3).

The court reasoned that the qualifying statement of the first sentence of Multiple Dwelling Law § 53, concerning its applicability only to fire escapes erected after 1929, could not be ignored. Further, the court found that the undisputed changes in the building's occupancy were not relevant because in order to bring a grandfathered fire escape into the reach of section 53, the fire escape must have been specifically modified, and none of the work on the building involved the fire escape. The court also determined that 1 RCNY 15-10 was inapplicable because it applied only when Multiple Dwelling Law § 53 applied.

The court, however, denied defendants' motion for dismissal, finding there was a genuine issue of fact as to whether 1968 Building Code of the City of New York § 27-380 applied, in light of several violations of the Building Code between 1984

---

1. The first sentence of Multiple Dwelling Law § 53 provides that "[e]very fire-escape erected after April eighteenth, nineteen hundred twenty-nine, shall be located, arranged, constructed and maintained in accordance" with provisions set forth in the statute.

and 2009 that were noted by the City, and under a theory of common-law negligence.

Thereafter, plaintiff and defendants moved for, among other things, reargument of the order denying their motions. The court granted plaintiff leave to reargue, and, upon reargument, granted plaintiff's cross motion for partial summary judgment on the issue of whether Multiple Dwelling Law § 53 and 1 RCNY 15-10 were applicable as a matter of law (2015 NY Slip Op 32081[U] [2015]). The court found that since 1948 fire escapes such as the one from which plaintiff fell were unlawful on any multiple dwelling, regardless of when the fire escape was built. We agree with that conclusion and now affirm that order.[2]

The New York State Legislature enacted the Multiple Dwelling Law in 1929 after finding that

> "intensive occupation of multiple dwelling sites, overcrowding of multiple dwelling rooms, inadequate provision for light and air, and insufficient protection against the defective provision for escape from fire, and improper sanitation of multiple dwellings in certain areas of the state are a menace to the health, safety, morals, welfare, and reasonable comfort of the citizens of the state" (*see* Multiple Dwelling Law § 2; L 1929, ch 713).

It therefore determined "that the establishment and maintenance of proper housing standards requiring sufficient light, air, sanitation and protection from fire hazards are essential to the public welfare" (*id.*).

When it was first enacted, Multiple Dwelling Law § 53 (formerly Multiple Dwelling Law § 145) set forth various provisions for fire escapes erected after April 18, 1929. Among other things, these provisions covered access to the fire escape from inside each apartment, proper locations for the erection of fire escapes, and load requirements for fire escapes, and required that every fire escape be made up of balconies and stairways (*see* Multiple Dwelling Law § 53 [1]-[8]). A separate section— Multiple Dwelling Law § 231—prohibited vertical ladder fire escapes in tenement buildings. It would thus appear that at the time the Multiple Dwelling Law was enacted, vertical ladder fire escapes erected prior to 1929 on non-tenement buildings, such as the one at issue, were permissible.

---

**2.** The court denied defendants' motion.

However, in 1948, the legislature amended the section to add language to subdivision (9) of Multiple Dwelling Law § 53 (*see* L 1948, ch 850). The law was entitled "An Act to amend the multiple dwelling law, in relation to existing fire escapes," and subdivision (9), as amended, expressly states that "[a] wire, chain cable, vertical ladder or rope fire-escape is an unlawful means of egress. Every such fire-escape, if required as a means of egress, shall be removed and replaced by a system of fire-escapes constructed and arranged as provided in this section" (Multiple Dwelling Law § 53 [9]).

A plain reading of the clear and unambiguous language of subdivision (9) leads to the conclusion that all vertical ladders on multiple dwellings, regardless of when the fire escape was constructed, are unlawful and must be removed and replaced by a fire escape that complies with the provisions of Multiple Dwelling Law § 53. Notably, the section includes no exceptions of any kind, and does not limit the requirement to fire escapes built after 1929. Also significant is that Multiple Dwelling Law § 53 (9) is written in the future tense, suggesting that the action to remove and replace should apply in the future, which would include pre-1929 fire escapes. Moreover, section 53 (9) would be superfluous if it only applied to fire escapes postdating 1929 because those fire escapes were already governed by section 53. Construing the section in this manner effectuates the intent of the legislature, as evinced from the plain meaning of the words used in the amendment (*see Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205, 208 [1976]). Thus, we categorically reject defendants' position that the fire escape was somehow "grandfathered" in as permissible because it was erected prior to 1929. Nor are we bound to follow the holding in *People v Little* (53 Misc 2d 645 [App Term, 1st Dept 1967]) that section 53 (9) applies only to fire escapes erected after 1929, which holding we reject.

A review of other sections of the Multiple Dwelling Law, as well as the section's legislative history, further bolsters our plain-text interpretation of section 53 (9). The March 19, 1948 memorandum in support of the bill by the Joint Legislative Committee on Housing and Multiple Dwellings stated that the proposed amendment sought to make "the same provisions" (regarding the types of fire escapes that were unlawful) applicable to all types of multiple dwellings erected before 1929, "particularly since many hotels and similar type transiently occupied multiple dwellings [were] presently so equipped" (*see*

Mem of Joint Legis Comm on Housing and Multiple Dwellings, Bill Jacket, L 1948, ch 850 at 4, 1948 NY Legis Ann at 237).

Defendants contend that removal of the fire escape was not required by section 53 (9) because agency permission was a prerequisite to removal. However, the requirement to obtain permission prior to removal of a vertical ladder fire escape does not mean that the removal requirement was nullified, only that the Department of Buildings should be made aware of the renovation in order to monitor the construction and replacement of the fire escape system.

A separate memorandum from the Commissioner of Housing further explained that sections 231 and 232 of the Multiple Dwelling Law provided that a wire, chain cable, or vertical ladder fire escape was an unlawful means of egress for tenements, and that this bill would include the same prohibitions for "multiple dwellings generally" and would "add rope fire-escapes to those presently prohibited by Section 232" (Mem of Commissioner of Housing, Bill Jacket, L 1948, ch 850 at 3). Similarly, a memorandum from the New York City Mayor's Office noted that the fire escapes prohibited by the bill were "outmoded," and, although the memorandum opined that such fire escapes were found only in "old law tenements," it stated that "should they be found in any other type of multiple dwelling, the bill would prohibit their use and direct their removal and replacement" (Mem of Office of Mayor of City of NY, Bill Jacket, L 1948, ch 850 at 6).

■ This legislative history indicates that the intention of the legislature in enacting the bill was to have the prohibitions on wire, chain cable, vertical ladder and rope fire escapes apply to all multiple dwellings, without exception. Accordingly, we find that as a matter of law Multiple Dwelling Law § 53 (9) is applicable to the vertical fire escape constructed prior to 1929 where plaintiff fell.

■ We separately find that removal of the fire escape here was required without regard to section 53 (9) because the building's occupancy classification changed over time. Defendants concede that the building was a "converted dwelling" because it was a dwelling erected before April 18, 1929, to be occupied by one or two families living independently of each other, and subsequently occupied as a multiple dwelling (with three or more families living independently) (see Multiple Dwelling Law § 4 [10]). Pursuant to Multiple Dwelling Law § 9 (3), a dwelling of one class or kind, altered or converted after

April 18, 1929, to another class or kind, "shall thereupon become subject to all the provisions of this chapter applicable to a building of that class or kind, erected after such date, to which it is altered or converted."

Multiple Dwelling Law § 187 (1) (b), which is applicable to converted dwellings, provides that dwellings with more than two stories shall have two independent means of egress or one means of egress and a sprinkler system, and that the required second means of egress shall be a system of outside fire escapes, constructed and arranged as provided in section 53 for fire escapes erected after April 18, 1929 (*see* Multiple Dwelling Law § 187 [1] [e]). Therefore, compliance with Multiple Dwelling Law § 53 was required for converted dwellings such as the subject building regardless of when the fire escape system was constructed.

■ Alternatively, were the building considered to be a tenement—i.e. a building erected before April 18, 1929, which is occupied in whole or part as a residence of three families or more living independently, that is not a converted dwelling (*see* Multiple Dwelling Law § 4 [11])—then the vertical ladder fire escape was prohibited by Multiple Dwelling Law §§ 231 (3) (d) and 232 (2), which were applicable to tenements.

■ Further, having found that Multiple Dwelling Law § 53 (9) is applicable as a matter of law, we also find that 1 RCNY 15-10 (c), which supplements the provisions of Multiple Dwelling Law § 53 in relation to fire escapes, and similarly mandates that vertical ladder fire escape systems be removed and replaced, is applicable to this action.

■ Supreme Court also correctly found that there was a genuine issue of fact as to whether 1968 Building Code of City of New York (Administrative Code) title 27, subchapter 6 applied. Building Code § 27-354 provides that Building Code title 27, subchapter 6 is applicable where there was an alteration or change in occupancy of a building. Building Code § 27-380 required that the means of egress comply with the provisions governing fire escapes. Section C26-298.0 of the 1938 Code and section 27-380 of the 1968 Code required that a fire escape have stairs, and the subject fire escape did not have stairs. The citations issued for violation of other sections of these Building Codes, defendants' concession that the occupancy classification of the building changed over time, and the affidavit from plaintiff's expert relating to the changes in occupancy were sufficient to raise an issue of fact about the applicability of the

1938 and 1968 Building Codes. In particular, plaintiff's expert opined that the building's conversion of the second floor from commercial space to residential occupancy sometime after 1940 made the 1938 Building Code and its requirement of a fire escape with stairs applicable, and that, in the alternative, the subsequent conversion to a multiple dwelling of three or more families from a two-family dwelling in 1959 may have made either the 1938 or 1968 Code applicable.

We have considered defendants' remaining arguments, including those regarding due process and proximate cause, and find them unavailing.

Accordingly, the order of the Supreme Court, New York County (Geoffrey D. Wright, J.), entered January 13, 2015, which, to the extent appealable, upon granting plaintiff reargument, granted her cross motion for partial summary judgment deeming Multiple Dwelling Law § 53, 1968 Building Code of the City of New York (Administrative Code of City of NY) §§ 27-354 and 27-380 and Rules of City of New York Department of Buildings (1 RCNY) § 15-10 applicable to this action, should be affirmed, without costs, and the appeal from said order, to the extent the order denied defendants' motion for reargument, should be dismissed, without costs, as taken from a nonappealable order. The order of the same court and Justice, entered June 18, 2014, which, insofar as appealed from as limited by the briefs, denied defendants' prior motion for summary judgment dismissing claims based on statutory violations, should be affirmed, without costs.

ACOSTA, MOSKOWITZ and GISCHE, JJ., concur.

Order, Supreme Court, New York County, entered January 13, 2015, insofar as it granted plaintiff's motion for partial summary judgment upon reargument, affirmed, without costs, and the appeal from said order, insofar as the order denied defendants' motion for reargument, dismissed, without costs, as taken from a nonappealable order. Order, same court, entered June 18, 2014, to the extent appealed from as limited by the briefs, affirmed, without costs.